IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:12-CV-320 |
| vs. | |
| $45,000.00 IN UNITED STATES CURRENCY AND 2001 ITASCA SUNCRUISER MOBILE HOME, VIN5B4LP57G013332941, | MEMORANDUM AND ORDER |
| Defendant. | |

  This matter is before the Court on claimant Hugo L. Soto's objection (filing 41) to the Magistrate Judge's Memorandum and Order (filing 38) denying Soto's motion to suppress (filing 16). A district court may reconsider a magistrate judge's ruling on nondispositive pretrial matters only where it has been shown that the ruling is clearly erroneous or contrary to law. *See,* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *Ferguson v. United States,* 484 F.3d 1068 (8th Cir. 2007). The Court has carefully considered the record, the parties' briefs, and the Magistrate Judge's Memorandum and Order. The Court concurs with the Magistrate Judge's ultimate finding and will deny Soto's objection.

**FACTUAL BACKGROUND**

  The pertinent facts are set forth in the Magistrate Judge's Memorandum and Order. Soto has not objected to the Magistrate Judge's basic statement of the facts, although he disputes some specific matters and some of the inferences the Magistrate Judge drew from the facts. The Court finds that the Magistrate Judge accurately stated the pertinent facts, and so the Court will only set forth a brief summary of the facts.

  This case arises from a traffic stop conducted by Nebraska State Trooper Derek Kermoade. On the night of February 29, 2012, Soto was driving a recreational vehicle ("RV") westbound on Interstate 80. Kermoade, who was driving behind Soto, observed the RV activate its turn signal and then change lanes. Believing that the driver had failed to use the turn signal for the entire duration required by Neb. Rev. Stat. § 60-6,161, Kermoade

initiated a traffic stop. The traffic stop and the following events were recorded by a camera in Kermoade's cruiser, and the Court has reviewed the audio and video of the recording.

Kermoade asked Soto to join him in the patrol car while Kermoade completed a written warning and contacted dispatch to check Soto's license and registration. Throughout this process, Kermoade asked Soto about the nature of Soto's trip and about the other passengers in the RV. Kermoade's tone was calm and conversational throughout the process.

Approximately 20 minutes after initiating the traffic stop, Kermoade issued Soto a warning for failure to properly signal his lane change and returned Soto's paperwork. Kermoade then told Soto he was "good to go," but then asked if he could ask Soto a few more questions. Soto agreed. Kermoade asked if there were any drugs or weapons in the RV, which Soto denied. Kermoade then asked if there were any large amounts of cash in the RV, which Soto also denied. Kermoade then asked for consent to search the RV, to which Soto agreed. Soto then signed a written consent form.

Upon searching the RV, Kermoade discovered over $40,000 in U.S. currency. The United States has seized the currency and RV, alleging they are property arising from or facilitating drug-related criminal activity. Soto claims the currency and RV were obtained lawfully and demands their return (filing 9).

## ANALYSIS

Soto has moved to suppress the search of the RV, arguing that (1) the officer lacked lawful cause to stop the RV; (2) his consent to the search was not valid; and (3) even if his consent was valid, it was not sufficient to purge the taint of the illegal stop. Soto now also argues that the stop was unlawful because the statute cited for the stop, Neb. Rev. Stat. § 60-6,161, is unconstitutionally vague.

### I. Probable Cause for the Traffic Stop

A traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred. *United States v. Herrera-Gonzalez*, 474 F.3d 1105, 1109 (8th Cir. 2007). However, even if the officer was mistaken in concluding that a traffic violation occurred, the stop does not violate the Fourth Amendment if the mistake, whether of fact or law, was an objectively reasonable one. *Id.*; *see also United States v. Payne*, 534 F.3d 948, 951 (8th Cir. 2008).

Kermoade stopped Soto because he believed Soto had failed to use his turn signal for 100 feet prior to changing lanes, as required by Neb. Rev. Stat. § 60-6,161. At the hearing, Soto and the United States both presented

testimony from experts regarding the stop. Both experts agreed that Soto in fact traveled for over 100 feet with his turn signal activated before changing lanes.

Soto's expert, civil engineer Peter Himpsel, reviewed the video and concluded that after Soto activated the turn signal, the RV continued traveling straight in its lane for 0.7 seconds before beginning to move laterally to the other lane, and that it started crossing the line separating the lanes approximately 1.4 seconds after signaling. Based on an estimated speed of 65 miles per hour, Himpsel opined the RV traveled 67 feet before beginning to move laterally and 204 feet before crossing the line.

The United States presented testimony from Pedram Nabegh, a Nebraska State Patrol officer trained in accident reconstruction. Nabegh agreed that Soto's RV would have traveled straight for 0.7 seconds. He disagreed slightly on the remaining points. Nabegh estimated Soto's speed as 60 miles per hour. At that speed, Soto would have traveled straight for 62 feet. And based on his own analysis, Nabegh concluded that Soto began to cross the line after having used his signal for 147 feet.

The Magistrate Judge found that although Soto did not, in fact, violate Neb. Rev. Stat. § 60-6,161, Kermoade's mistake was not objectively unreasonable, thus Kermoade had sufficient cause to believe Soto had violated the statute to initiate a traffic stop. This Court need not decide whether Kermoade was unreasonably mistaken. As the Court next explains, even if the stop was not lawful, Soto's consent was sufficient to purge the resulting taint.

## II. Consent to Search

Even if a traffic stop is determined to be invalid, subsequent voluntary consent to a search may purge the taint of that illegal stop if it was given in circumstances that render it an independent, lawful cause of the officer's discovery. *Herrera-Gonzalez*, 474 F.3d at 1111. The Magistrate Judge found that Soto voluntarily consented to the search of his RV. This Court has considered the facts and the relevant factors, *see United States v. Esquivias*, 416 F.3d 696, 700 (8th Cir. 2005), and likewise finds that Soto's consent was voluntary.

Even if Soto's consent was voluntary, the Court must also consider whether it was given in circumstances that render it an independent, lawful cause of the officer's discovery. *Herrera-Gonzalez*, 474 F.3d at 1111. To determine whether sufficient attenuation exists between the unlawful stop and the consent, the Court considers: (1) the temporal proximity between the illegal stop and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *Id.* The Court

must carefully weigh the facts of each case, and no single fact is dispositive. *Id.* However, the purpose and flagrancy of the official misconduct is the most important factor, because it is directly tied to the purpose of the exclusionary rule: deterring police misconduct. *Id.* The Magistrate Judge carefully considered the evidence under these factors and concluded that Soto's consent was sufficient to purge the taint, if any, of the traffic stop.

This Court finds likewise. First, Soto's consent was given within approximately 20 minutes of the stop. This length of time is not short or long enough to weigh significantly in the Court's analysis. *See id.*

Second, there were at least some intervening circumstances. Although Kermoade did not verbally inform Soto he could refuse consent to the search, the form that Soto signed contained an advisement to the effect. Filing 34 at 108. And Kermoade only asked for consent to search after returning Soto's paperwork, issuing a warning ticket, and telling Soto he was "good to go." All of these weigh in favor of finding a "break" between the stop and Soto's consent to search. *See United States v. Esquivel,* 507 F.3d 1154, 1160 (8th Cir. 2007). Kermoade also testified that Soto appeared unusually nervous and was sweating. And although Soto answered clearly when asked if there were drugs or guns in the car, he hesitated and looked at the RV before denying there were large amounts of currency in the RV. *See Herrera-Gonzalez,* 474 F.3d at 1112–13 (facts that gave officer "some suspicion" of criminal activity relevant to second factor).

As to the third and most important factor, the Court finds that the traffic stop, even if illegal, was not a flagrant Fourth Amendment violation. Even assuming Kermoade was mistaken, and that his mistake was objectively unreasonable, that alone is not sufficient to establish flagrant misconduct. *Id.* at 1113. That is especially true where, as here, the officer's mistake is a matter not of seconds, but fractions of seconds. Finally, nothing in the record suggests that Kermoade was attempting to exploit an illegal situation or acted in bad faith in asking for consent. *Id.* at 1114. The Court therefore finds that Soto's consent was valid and sufficiently an act of free will to purge the taint, if any, of the traffic stop.

### III. Soto's Vagueness Challenge to Neb. Rev. Stat. § 60-6,161

Finally, Soto argues that Neb. Rev. Stat. § 60-6,161 is unconstitutionally vague, as it gives police "unbridled authority to stop any car on the road at any time." Filing 41 at 16. The Court need not reach the merits of Soto's final argument. Soto's consent was sufficiently an act of free will to purge the taint, if any, of the traffic stop, including any due process concerns raised in Soto's vagueness challenge.

- 5 -

THEREFORE, IT IS ORDERED that Soto's objection (filing 41) is overruled.

Dated this 19th day of December, 2013.

BY THE COURT:

_____
John M. Gerrard
United States District Judge

- 5 -